Murray DESSLER

v.

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL UNION NO. 251; John E. Amaral, In his Individual and Official Capacity as President of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 251; Gerald Blinkhorn, In his Individual and Official Capacity as Secretary–Treasurer of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 251; and James Boyajian, In his Individual and Official Capacity as Business Agent of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 251.

Civ. A. No. 88–0057 L.

United States District Court,
D. Rhode Island.

June 10, 1988.

Andrew B. Prescott and Christopher H. Little, ACLU Foundation of Rhode Island, Providence, R.I., for plaintiffs.

Richard M. Peirce, Roberts, Carroll, Feldstein & Tucker, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

The primary issue to be decided in this matter is whether a labor union may "censure" one of its members for writing a letter critical of union election activities without falling within the prohibition of 29 U.S.C. § 529 which forbids a union from otherwise disciplining a member for exercising his right to express his "views, arguments or opinions." As will become apparent, the word "discipline" is a term of art which has been defined by the federal courts to exclude the type of "censure" in question here. Count two of plaintiff's complaint must, therefore, be dismissed.

Count one of plaintiff's complaint, however, survives dismissal because the issue of law with respect to that count is whether a cause of action for "infringement" of plaintiff's § 411(a)(2) rights lies in this case. All grounds advanced by defendants for arguing failure to state a claim upon which relief can be granted (other than the primary issue) raise issues of fact inappro-priate for decision upon a motion to dismiss. The motion on these grounds with respect to count one, thus, must be denied.

Plaintiff, Murray Dessler is a member of the Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 251 (Local 251). He has been a member in good standing with the Union for twenty-two years.

Defendant Local 251 is a labor organization engaged in an industry affecting commerce as defined by 29 U.S.C. § 402(j). Defendants James Boyajian, John E. Amaral, and Gerald Blinkhorn are the Business Agent, President and Secretary–Treasurer of Local 251 respectively. Both Blinkhorn and Amaral are members of Local 251's Executive Board (the Board). All three individual defendants are sued in their official and individual capacities.

In early 1987, Local 251 undertook a campaign to seek election as the bargaining agent for employees of the Rhode Island Institute of Mental Health in Cranston, Rhode Island. These employees, however, were already represented by Local 1350 of the American Federation of State, County and Municipal Employees. In response to these activities, plaintiff wrote a letter to the editor that appeared in the Providence Journal on April 17, 1987 (Exhibit A). The letter implicitly criticized Local 251 for attempting to "raid" Local 1350 for new membership. It also criticized defendant Boyajian for instigating the challenge to Local 1351 for intra-union political advantage. Allegedly, as a result of this letter, Local 251 lost the election to be selected as the bargaining agent for the Rhode Island Institute of Mental Health.

On April 23, 1987, defendant Boyajian filed charges against plaintiff for violating Article XIX, Section 6(b)(5) of the Teamsters International Constitution and Local 251 By–Laws, Article XIX, Sections 5(a)(c)(d). Plaintiff received notice of these charges indicating that on May 9, 1987, he would be tried before the Executive Board of Local 251.

The hearing was held and on July 6, 1987, plaintiff received a letter from de-

fendant Blinkhorn informing him of the Board's decision. The Board voted to find plaintiff not guilty of the charges brought against him. Nonetheless, Blinkhorn indicated, the Board did find that a "number of facts" contained in plaintiff's April 9th letter were incorrect. Thus, the Board unanimously voted to "censure" plaintiff for writing the April 9th letter to the Providence Journal. An account of the vote contained in the July 6th letter to plaintiff was subsequently published in the summer issue of Local 251's newsletter (Exhibit B).

On January 25, 1988, plaintiff filed a two-count complaint in this Court alleging that defendants violated his right to free speech under the Labor–Management Reporting and Disclosure Act (LMRDA). Count one of plaintiff's complaint alleges that defendants "infringed" upon plaintiff's right "to express any views, arguments or opinions" by publicly censuring plaintiff in the Local 251 newsletter, summer issue 1987. 29 U.S.C. § 412; 29 U.S.C. § 411(a)(2). Count two of plaintiff's complaint alleges that the same conduct on the part of defendants constituted unlawful "discipline" of a union member for exercising his right "to express any views, arguments or opinions" 29 U.S.C. § 412; 29 U.S.C. § 529; 29 U.S.C. § 411(a)(2).

Within a month after the complaint was filed, defendants moved to dismiss the action on the grounds that plaintiff (1) failed to exhaust intra-union remedies (2) failed to sue within the period of the applicable statute of limitations and (3) failed to state a claim upon which relief could be granted. In response to this motion, plaintiff objected and the entire matter was set down for hearing by this Court on January 25, 1988.

On that date, defendants argued that a "censure" did not constitute "discipline" within the meaning of 29 U.S.C. § 529. In addition, upon the Court's expression of interest in the issue, defendants argued that a six month statute of limitations "borrowed" from § 10(b) of the National Labor Relations Act (NLRA) barred plaintiff's claims. Defendants, however, did not argue any of the other grounds for dismissal that were contained in their memoranda accompanying the motion to dismiss. Since the statute of limitations question was recently ruled upon by the Supreme Court in *Agency Holding Corp. v. Malley–Duff & Assoc.*, —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Court requested additional memoranda by the parties to determine if that decision altered their initial arguments. Supplemental memoranda on this issue were submitted by the parties on April 15, 1988. The matter now is in order for decision.

■ The issues to be decided in this case may be divided into three groups. The first group consists of the sole issue of whether plaintiff should have exhausted his intra-union remedies prior to filing an action in this Court. 29 U.S.C. § 411(a)(4) provides:

> No labor organization shall limit the right of any member thereof to institute an action in any court ... *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof ...

Case law interpreting this section uniformly holds that it is within the discretion of the trial judge to determine whether a union complainant must exhaust his intra-union appeals prior to filing suit in federal court. *Pearl v. Tarantola,* 361 F.Supp. 288, 292 (S.D.N.Y.1973).

Defendants concede that the only possible "decision" which plaintiff could have appealed was that rendered by the Local Board on July 6, 1987. Plaintiff did not appeal that decision, obviously, because he was found "not guilty" of the charges brought against him by defendant Boyajian. The July decision simply did not give rise to the present cause of action. Rather, it was the later publication of the letter of censure in the union newsletter that forms the basis of plaintiff's grievance against defendants. Plaintiff, then, did not have any intra-union appeals to exhaust.

If there was an alternative procedure for contesting the publication of the letter of

censure, defendants have not adequately shown the Court what that procedure is. All they have posited is a conclusory statement that plaintiff could have filed "a complaint against the local" with the Joint Council. This is not enough. In the Court's discretion, then, plaintiff is not required to exhaust his intra-union appeals before proceeding on his action in this Court.

■ The second group of issues consists of the sole question: Whether the six-month statute of limitations period provided by § 10(b) of the NLRA applies to claims brought under Title I of LMRDA. Even if the Court were to assume that a six-month limitation period applies in this case (and the Court does not decide this issue), plaintiff's claims would survive dismissal.

The Supreme Court has indicated that a complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A corollary of this rule is that the facts set forth in the complaint should be construed in the light most favorable to the plaintiff.

Plaintiff was censured by the Board on July 6, 1987. His cause of action under LMRDA, however, did not arise until sometime later when the Board published the letter in the "summer issue" of the Local 251 newsletter. Nowhere in the complaint does the precise date of this publication appear. It could have been published as late as August 13th. If this were the case, then plaintiff's action would be timely because the purported limitation period would not expire until February 13, 1988. Plaintiff filed his complaint on January 26, 1988 well before the expiration of the statute of limitations. Under *Conley*, plaintiff may be able to "prove some set of facts" that show his claims were filed in timely fashion. In reality, defendants must plead the statute of limitations as an affirmative defense and prove its applicability. Since the complaint on its face does not indicate that it is time-barred, defendants' motion to dismiss the complaint because plaintiff allegedly has failed to meet the applicable limitations period must be denied.

The third group of issues to be decided embraces all grounds for dismissal under the heading of whether plaintiff has failed to state a cause of action upon which relief can be granted. These grounds or subissues are: (a) whether an infringement action lies in this case under 29 U.S.C. § 412 (b). If such an action does exist, did defendants infringe upon plaintiff's § 411(a)(2) rights (c) whether plaintiff has failed to state a cause of action against the union officials as individuals and (d) whether a "censure" constitutes discipline within the meaning of 29 U.S.C. § 529.

■ As to the first of these subissues, in *Finnegan v. Leu*, 456 U.S. 431, 441, 102 S.Ct. 1867, 1873, 72 L.Ed.2d 239 (1982) the United States Supreme Court indicated:

We need not decide whether the retaliatory discharge of a union member from union office—even though not "discipline" prohibited by [§ 529]—might ever give use to a cause of action under [§ 412]. For whatever limits Title I places on a union's authority to utilize dismissal from union office as "part of a purposeful and deliberate attempt ... to suppress dissent with the union," *cf. Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973), it does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own.

The clear implication of *Finnegan*, is that a plaintiff may have a cause of action for "infringement" under § 412 even though such "infringement" does not constitute "discipline" under § 529. *Maceira v. Pagan*, 649 F.2d 8, 13 (1st Cir.1981). This is true when such an action would not interfere with the ability of an elected union president to select his own administrators but rather would ensure that unions are "democratically governed." *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873.

In the present case, the latter value is that which is threatened. If plaintiff could prove that defendants published the censure letter "as part of a purposeful and

deliberate attempt to suppress dissent within the union" *Adams–Lundy v. Assoc. of Professional Flight Attendants,* 731 F.2d 1154, 1159 (5th Cir.1984) then surely the democratic integrity of the union is at risk. Consequently, plaintiff has properly averred an action for infringement in count one of his complaint.

Defendants do not really dispute this conclusion. Rather they claim that plaintiff was publicly censured not because he expressed his views upon the election compaign but because "he was perceived to have materially aided another union in election with his own union." In addition the individual defendants claim, plaintiff failed to allege that Amaral, Blinkhorn, and Boyajian acted in bad faith in either bringing the charges against plaintiff or publishing the letter of censure. Plaintiff on the other hand, by the very nature of his claim, alleges that defendants castigated him for expressing his views and that they did so in bad faith. For purposes of defendants' motion, the Court must credit plaintiff's version. Count one of plaintiff's complaint, thus, states a cause of action and defendants' motion to dismiss for failure to state a claim upon which relief may be granted for the reasons asserted is denied.

All that remains for resolution is the question of whether a "censure" constitutes "discipline" within the meaning of 29 U.S.C. § 529. That statute along with a relevant parallel section of LMRDA provide as follows.

### § 529. Prohibition on certain discipline by labor organization.

It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or *otherwise discipline* any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section.

### § 411(a)(5) Safeguards against improper disciplinary action.

No member of any labor organization may be fined, suspended, expelled, or *otherwise disciplined* except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

In *Grand Lodge of International Ass'n of Machinists v. King,* 335 F.2d 340, 344 (9th Cir.) *cert. denied,* 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964), the Ninth Circuit Court of Appeals stated that the words "otherwise discipline" although identical in both sections had "quite different meanings." The legislative gloss of § 411(a)(5) on those words stemmed primarily from congressional concern that union officials guilty of misappropriating funds might be permitted to remain in control while the time-consuming due process requirements of the section were met. This concern, the circuit court concluded, was inapplicable with respect to § 529. Thus, the words "otherwise discipline" in that section might embrace conduct such as removal of union employees from office.

The United States Supreme Court scrutinized the reasoning of the Ninth Circuit in *Finnegan v. Leu,* 456 U.S. at 438 n. 9, 102 S.Ct. at 1872 n. 9. After conceding that the Ninth Circuit's interpretation was one Congress "plausibly could have chosen to make," the Supreme Court remarked:

However, we are hard pressed to discern any such distinction from either the language or legislative history of the Act. Certainly one would expect that if Congress had intended identical language to have substantially different meanings in different sections of the same enactment it would have manifested its intention in some concrete fashion.

"Removal from appointive union employment," the Court held, thus was not "within the scope of those union sanctions explicitly prohibited by § 529." *Id.* at 439, 102 S.Ct. at 1872.

*Finnegan* teaches that whatever the purposes of § 411(a)(5) and § 529, the words "otherwise discipline" in both sections have

**982**

substantially the same meaning. It follows that cases interpreting those words as used in § 411(a)(5), are determinative of what was intended in § 529. One such case is *Bougie v. Indiana District Council of United Brotherhood of Carpenters & Joiners,* 67 L.R.R.M. 2402 (N.D.Ind.1968).

In *Bougie,* plaintiff filed slander charges against the local's business agent for calling him the laziest man on the job. At a subsequent meeting of the local union, it was announced that the executive committee had ordered that plaintiff be reprimanded by the chair. This was done. Subsequently, plaintiff brought an action in federal district court claiming that he had been disciplined in contravention of his right to free speech under § 411(a)(2) without being given notice and opportunity of a fair hearing pursuant to § 411(a)(5).

In deciding whether plaintiff had stated a claim under LMRDA, the court reasoned that although the reprimand in question might have stigmatized or tainted the reputation of plaintiff, such a result did not elevate it to the status of "discipline." *Id.* In the words of the Third Circuit Court of Appeals in *Rekant v. Shochtay-Gasos Union Local 446,* 320 F.2d 271 (3rd Cir.1963), the reprimand was at most a mere "slap on the wrist" that could not be raised to the level of a "fine, suspension or expulsion" or an action of similar severity embraced by the "otherwise discipline" proviso. Plaintiff, in *Bougie,* thus, failed to state a cause of action because the reprimand did not constitute discipline within the meaning of § 411(a)(5). *See also Harrington v. Painters District Council No. 35,* No. 81–2470 Slip. Op. (D.Mass. January 25, 1982) (Westlaw, ALLFEDS) (holding that a reprimand did not constitute discipline within the meaning of both § 411(a)(5) and § 529).

The "censure" published by defendants in the present case is no different than the reprimand in *Bougie.* The article that appeared in Local 251's summer newsletter was merely a public criticism of or disagreement with plaintiff for stating what defendants believed were erroneous facts about Local 251's bid to serve as the bargaining agent for employees of the Rhode Island Institute of Mental Health. The "censure," just like the reprimand in *Bougie,* was at most a "mere slap on the wrist," that as a matter of law, did not rise to the level of severity contemplated by the words "otherwise discipline" contained in § 529.

For all the above reasons, defendants' motion to dismiss count two of plaintiff's complaint is granted. Their motion to dismiss count one of the complaint is denied.

*It is so Ordered.*

### EXHIBIT A

### COMMENTARY

Friday, April 17, 1987

Teamster Election

As a teamster, I would like to give my viewpoint on the upcoming election attempt by the teamsters to represent the IMH workers.

In the past, the teamsters have always had a good reputation for organizing industries that were previously not organized, but rarely have they raided other unions for new membership.

Along comes James Boyajian, business agent for the teamsters Local 251. In the last two elections Mr. Boyajian has tried to wrest the presidency of our local from John Amaral. The rank and file has rebuffed him twice because they consider Mr. Amaral the most qualified and capable candidate. It makes me feel that Mr. Boyajian has no alternative but to turn to the outside for help.

Are the IMH workers to be used as pawns for his political ambitions?

Is the organizing attempt in the best interest of the members of Local 251? Will the members of Local 1350 benefit from this?

With all the industry in Rhode Island that can be unionized, I ask emphatically, why are we doing such an unethical thing as to breach another union's trust in an attempt to steal its members?

Murray Dessler
April 9, 1987
Cranston

EXHIBIT B

LETTER OF CENSURE

Brother Murray Dessler was censured by Teamster Local 251's Executive Board because the facts of his Letter to the Editor were incorrect, for the following reasons:

First, AFSME has a history of raiding the teamsters throughout the country.

Second, the organizational efforts at the Rhode Island Institute of Mental Health were supported by this Local Union, Joint Council 10 and the International Union.

Third, it had significant cost to the Union in dollars and manpower.

Fourth, Dessler's Letter to the Editor contributed significantly to the loss of the campaign to the detriment of the Union.