Richard **ALMEIDA**, Plaintiff,

v.

**UNITED STEELWORKERS OF AMERICA INTERNATIONAL UNION, AFL—CIO; Leo W. Gerard, International Secretary Treasurer; and George Becker, International President, Defendants.**

C.A. No. 98–499L.

United States District Court,
D. Rhode Island.

June 2, 1999.

Charles S. Kirwan, Pawtucket, RI, for plaintiff.

Richard M. Peirce, Adam C. Robitaille, Roberts, Carroll, Feldstein & Peirce, Providence, RI, Bruce A. Miller, Miller & Cohen, P.L.C., Detroit, MI, for defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Plaintiff Richard Almeida ("Almeida"), an employee of defendant United Steelworkers of America International Union, AFL—CIO ("Steelworkers"), ran unsuccessfully for an elective union post. Almeida claims that incumbent Steelworkers officials, smarting from his public criticisms of their administration, retaliated against his elective challenge by harassing him, firing him from his union employment, and dismissing him from union

membership. Alleging violations of state and federal law, Almeida seeks monetary and equitable relief for these wrongs. At this stage of the proceedings, defendants urge dismissal of the Complaint while plaintiff requests leave to amend his pleading. For the reasons discussed below, both motions are granted in part and denied in part.

## BACKGROUND

For the purposes of analyzing both defendants' Motion to Dismiss and plaintiff's Motion to Amend, the Court construes plaintiff's pleadings in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Figueroa v. Rivera,* 147 F.3d 77, 80 (1st Cir.1998); *cf. Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996) (explaining that there is no difference in the standards of review for ruling on motions to dismiss and motions to amend when the amendment is challenged for futility). With that perspective fixed, the Court will now examine the facts alleged by plaintiff.

In 1995, Almeida, a long-time employee of the United Rubber Workers International Union and a Rhode Island resident, became an employee and a member of the Steelworkers when the two unions merged. Almeida worked as a Staff Representative for his new union, a non-managerial position covered by a collective bargaining agreement. In this position, Almeida was also a member of the Staff Representatives' Union, an organization formed for the purpose of representing certain employees of the Steelworkers' union. A collective bargaining agreement between the Staff Representatives' Union and the Steelworkers (the "CBA") entered into on April 28, 1995 in Pittsburgh, Pennsylvania governs the full range of terms and conditions of Almeida's employment. Most importantly, Article VI of the CBA provides that "[n]o employee shall be suspended or discharged except for just cause." The CBA also provides for grievance and arbitration procedures for resolution of disputes between individual employees and the management of the Steelworkers.

Beginning in 1997 and continuing into 1998, Almeida was based in the Steelworkers' subdistrict office in Auburn, Massachusetts. He serviced local union affiliates throughout New England and New York, except that in 1997 his responsibility for Rhode Island locals ended. On June 11, 1998, the Steelworkers informed Almeida that he was fired. Almeida claims that his union membership was also terminated at that time. When Almeida attempted in September 1998 to lodge a formal complaint against a union official for violations of the Steelworkers' constitution, the union responded by questioning Almeida's "standing" to petition the organization "given your doubtful membership status in the International."

Almeida argues that he was nothing short of an exemplary employee and, therefore, the Steelworkers could not establish that his termination was supported by "just cause." To the contrary, he argues that improper, and actionable, motives underlie the Steelworkers' treatment of him. Prior to his termination, Almeida ran for elective union office against an incumbent official. Almeida's self-portrait depicts a union dissident, vocal in his criticisms of the status quo and steadfast in his campaign to effect change in the organization by publicly exposing its defects.

Steelworkers' officials had other reasons to try to silence Almeida. Almeida contends that he was punished for disclosing and threatening to disclose irregularities in the Steelworkers' administration to federal officials. Almeida filed complaints with the National Labor Relations Board accusing Steelworkers officials of violating federal law. He also informed the union that he planned to report to the Internal Revenue Service certain illegal tax payment practices of the Steelworkers. Almeida does not allege that he followed through with this threat.

Both the Complaint and the Amended Complaint identify specific ways in which the Steelworkers allegedly punished Almeida. According to these pleadings, union officials harassed, threatened, and assaulted Almeida, assigned him to work at sites far from his home to interfere with his family life and make it impossible for him to perform his duties effectively, caused him to be arrested without cause, spread unfounded rumors about him within the union, and filed unjustified counterclaims in this lawsuit. But Almeida claims that exercise of his free speech rights came at even greater costs—loss of both his job and his membership in the Steelworkers' union. Plaintiff avers that the Steelworkers as an organization acted with the intention to harm him and prevent him from exercising his rights to participate in union democracy and to express a viewpoint that challenges the established union hierarchy.

Plaintiff has opted to seek vindication of his rights on two fronts. On June 12, 1998, four days after being terminated from his union employment, Almeida filed a grievance pursuant to the CBA, arguing that the Steelworkers terminated him without just cause. On May 3, 1999, an arbitrator ruled that the Steelworkers were justified in disciplining Almeida, but that termination was too harsh a penalty for his errors. The arbitrator instead imposed a one-month suspension without pay and ordered that the Steelworkers reimburse Almeida for lost wages beyond that period.

This lawsuit represents the second tack taken by Almeida to remedy the injustices he perceives. On October 2, 1998, plaintiff filed the original Complaint in this lawsuit. In it, he asserted four causes of action. Count I alleged that defendants violated the Rhode Island Whistleblowers' Protection Act, R.I.Gen.Laws §§ 28–50–1 to –9 (1995), by retaliating against Almeida for his reports to government agencies. Count II alleged that defendants violated plaintiff's rights under one subsection of the Bill of Rights of Members of Labor Organizations, 29 U.S.C. § 411(a)(2), by depriving Almeida of his full union membership rights for publicly expressing his views about the Steelworkers' administration. Count III alleged that defendants violated 29 U.S.C. § 529 by improperly dismissing Almeida from union membership in the Steelworkers in retaliation for his vocal dissension. Through his two filings, plaintiff has requested a full range of remedies. Some relate to his loss of union employment, including back pay, future pay, and the value of lost fringe benefits. He has also alleged damages not necessarily related to his employment losses, but potentially arising from defendants' other actions. He seeks compensation for physical and emotional distress as well as for damage to his career and reputation. Punitive damages, attorney's fees, and an order prohibiting further retaliatory acts by the Steelworkers are also being pressed. Jurisdiction is premised on diversity of the parties, the federal question doctrine, specific labor law grants of jurisdiction, and pendant jurisdiction. Defendants have filed a counterclaim alleging that plaintiff is liable to them for breach of duty as an employee and for abuse of process.

On December 8, 1998, Almeida filed a Motion to Amend his original Complaint. On the following day, defendants filed a Motion to Dismiss the original Complaint. Both motions were argued before the Court on February 2, 1999. This Court issued an order staying discovery until these two motions are resolved.

The Amended Complaint both adds and subtracts from the original pleading. The amendment drops the cause of action based on the Rhode Island Whistleblowers' Protection Act. Count I of the Amended Complaint outlines a new cause of action alleging that defendants violated the public policy doctrines of the Commonwealths of Massachusetts and Pennsylvania, the two states whose laws are potentially applicable to suits arising from Almeida's termi-

nation of employment. Count II of the Amended Complaint also outlines a new cause of action alleging that defendants violated the federal False Claims Act, 31 U.S.C. § 3730(h), by interfering with Almeida's plan to inform the Internal Revenue Service of wrongdoing. Counts III through VI of the Amended Complaint expand on the original Complaint's allegation that defendants violated Almeida's rights under the Bill of Rights of Members of Labor Organizations, 29 U.S.C. § 411. Count III alleges a violation of 29 U.S.C. § 411(a)(1). Count IV alleges a violation of 29 U.S.C. § 411(a)(2). Count V alleges a violation of 29 U.S.C. § 411(a)(4). Count VI alleges a violation of 29 U.S.C. § 411(a)(5). Finally, Count VII of the Amended Complaint repeats the cause of action based on 29 U.S.C. 529 included in the original Complaint.

■ Defendants object, claiming that the amendments are futile. Because the legal standard for determining the futility of an amendment is the same as that applied to a motion to dismiss for failure to state a claim, this Court will consider the causes of action presented by both the original Complaint and the Amended Complaint instead of treating the Motion to Amend and the Motion to Dismiss separately.

## DISCUSSION

### I. Standards of Review

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Figueroa v. Rivera,* 147 F.3d 77, 80 (1st Cir.1998). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229,

81 L.Ed.2d 59 (1984); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed.1990).

In contrast, trial courts have broad discretion to decide motions to amend the pleadings. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). However, the Court is mindful that the Rules command that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Yet, the Rules do not require the Court to carry a rubber stamp. The Court may deny leave to amend where it finds the amendments to be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Maldonado v. Dominguez,* 137 F.3d 1, 11 (1st Cir. 1998). Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *See Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996). "In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.* Amendments also may be disallowed for other reasons, such as unfair prejudice to the opposing party, undue delay, or bad faith. *See Grant v. News Group Boston, Inc.,* 55 F.3d 1, 5 (1st Cir.1995).

■ Defendants incorrectly argue that First Circuit precedent demands that this Court apply a more rigorous standard to the Motion to Amend because a Motion to Dismiss the original Complaint is now before the Court. Defendants propose that the Motion to Amend should be granted only if the amendments are supported by "substantial and convincing evidence." *Resolution Trust Corp. v. Gold,* 30 F.3d 251, 253 (1st Cir.1994). This heightened level of scrutiny is inapplicable to this Motion to Amend. The *Gold* standard has only been applied "where the motion to amend is made *after* a defendant has moved for summary judgment." *Glassman,* 90 F.3d at 623. Defendants have moved to dismiss, not for summary judgment. Furthermore, according to the

Court's records, the Motion to Amend was filed before defendants filed their dispositive motion.

## II. Exhaustion of Intra-union Remedies

■■■ Defendants attempt to sink Almeida's federal labor law claims before they are even launched. The Steelworkers argue that this Court should decline to exercise jurisdiction over Almeida's claims founded on 29 U.S.C. §§ 411 and 529 because he failed to pursue union grievance procedures outlined by the CBA covering staff representatives. However, it is within the trial court's discretion "to determine whether a union complainant must exhaust his intra-union appeals prior to filing suit in federal court." *Dessler v. Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 251,* 686 F.Supp. 977, 979 (D.R.I.1988); *see Clayton v. International Union, UAW,* 451 U.S. 679, 689, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) ("[C]ourts have discretion to decide whether to require exhaustion of internal union procedures."). The union bears the burden of establishing that its internal procedures would provide plaintiff with a fair forum and that recourse to the union's process would not be futile because of union officials' hostility. *See Clayton,* 451 U.S. at 689, 101 S.Ct. 2088; *Maddalone v. United Bhd. of Carpenters & Joiners of America, Local 17,* 152 F.3d 178, 186 (2d Cir.1998). Furthermore, the union must show that its procedures are capable of awarding plaintiff the full measure of relief he seeks and that pursuit of such a hearing would not "unreasonably delay the [complainant's] opportunity to obtain a judicial hearing on the merits of his claim." *Clayton,* 451 U.S. at 689, 101 S.Ct. 2088. If any of these problems with the union's procedures are identified, "the court may properly excuse the [complainant's] failure to exhaust." *Id.*

■■■ Defendants have failed to convince this Court that it should not assert jurisdiction to hear Almeida's claims. Defendants have not demonstrated that their internal procedures are capable of remedying what plaintiff alleges is an on-going pattern of harassment designed to quell opposing viewpoints within the union. The problems alleged by Almeida go beyond the run of the mill employee-employer argument over work conditions. Almeida alleges that union leaders crafted a design to subvert union democracy. Defendants have presented no evidence that a simple grievance process, administered by the very officials accused of stifling dissent, is equipped to remedy the damage alleged in Almeida's pleadings. Furthermore, defendants have not explained how the grievance procedure contained in the CBA between the Steelworkers and the Staff Representatives Union can be used to enforce Almeida's membership rights in the Steelworkers union. Although the CBA may be useful for the resolution of Almeida's employment complaints, it is unclear how this contract could resolve union democracy problems in an altogether separate union. Defendants' exhaustion argument is unavailing.

## III. Bill of Rights of Members of Labor Organizations

At the core of Almeida's action is the contention that the Steelworkers punished him to squelch dissent within the union. Both of Almeida's pleadings accuse the Steelworkers of carrying out a plan to enforce an orthodoxy of opinion through harassment and denial of union member rights. Plaintiff hopes the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401–531, will provide him with some recourse. Title I of the LMRDA establishes a "Bill of Rights of Members of Labor Organizations." *See* LMRDA § 101, 29 U.S.C. § 411. This "Bill of Rights" guarantees union members certain free speech and due process rights in their relationships with their labor organizations. *See id.* § 411. Defendants deny that the LMRDA is even applicable to the facts of this dispute. The Steel-

workers argue that the statute protects only the rights of union members, and not the rights of union employees. Although this proposition, subject to a limited exception, is true, defendants ignore a crucial allegation made by Almeida in both the Complaint and the Amended Complaint that rescues his LMRDA counts, at least for the purposes of the motions now before the Court.

 The Bill of Rights located at § 101 of the LMRDA guarantees to union members certain rights of expression and due process. *See* 29 U.S.C. § 411. Protected are several privileges of union membership: (1) the right to participate equally in the system of union democracy, a general privilege that encompasses the more specific rights to nominate candidates, vote, and attend meetings, *see id.* § 411(a)(1); (2) the right to "express any views, arguments, or opinions," including opinions related to union business or candidates for union office, *id.* § 411(a)(2); (3) the right not to be subject to increases in dues except those instituted by majority vote of the membership, *see id.* § 411(a)(3); (4) the right to sue a labor organization and its officers, *see id.* § 411(a)(4); and (5) the right not to be "fined, suspended, expelled, or otherwise disciplined" without due process, *id.* § 411(a)(5). Only discipline that is the result of "some sort of established disciplinary process" is encompassed by the language of § 411(a)(5), and not merely "ad hoc retaliation by individual union officers." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 91–92, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989); *see Linnane v. General Elec. Co.,* 948 F.2d 69, 71 (1st Cir.1991).

 A union member whose rights under § 411 have been infringed may institute a civil action in federal court for appropriate relief. *See* 29 U.S.C. § 412 (granting a cause of action to "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any

violation of this subchapter"); *Maceira v. Pagan,* 649 F.2d 8, 13 (1st Cir.1981) (holding that the test for a § 412 action is whether the union has "infringed" a right guaranteed by § 411). The purpose of § 412 is to "ensure that unions are 'democratically governed.'" *Dessler,* 686 F.Supp. at 980 (quoting *Finnegan v. Leu,* 456 U.S. 431, 441, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982)). Therefore, a plaintiff states a cause of action under the statute when he or she alleges that a union, for the purpose of suppressing dissenting voices, has improperly encroached upon the sphere of activity protected by § 411. *See Maceira,* 649 F.2d at 13–15. The rights guaranteed by the subsections of § 411 are "distinct from one another" and may constitute independent bases for a lawsuit filed pursuant to the grant of § 412. *Maddalone,* 152 F.3d at 183.

 The United States Supreme Court has explained that § 411 protects the rights of union members as members, and not as union employees in policymaking positions. *See Finnegan v. Leu,* 456 U.S. 431, 442, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). In *Finnegan,* the Court rejected the LMRDA claims of appointed union business agents who were fired after supporting the losing candidate in a union election. *See id.* at 441–42, 102 S.Ct. 1867. The *Finnegan* plaintiffs had no recourse to the LMRDA because their dismissals from union posts had "only an *indirect* interference with their membership rights." *Id.* at 440, 102 S.Ct. 1867. Furthermore, the Court was concerned that union democracy, the overriding goal of the LMRDA, could be undermined if elected union leaders were unable to choose their own policymaking staffs. *See id.* at 441, 102 S.Ct. 1867. The *Finnegan* Court expressly declined to decide whether nonpolicymaking employees of a union could invoke the LMRDA where they allege wrongful discharge in retaliation for expressing dissenting views. *See id.* at 441 n. 11, 102 S.Ct. 1867.[1] Therefore, the touchstone for

---

**1.** The United States Court of Appeals for the Second Circuit has directly addressed the gap

stating a cause of action under § 411 is the denial of union membership privileges.

Plaintiff's original Complaint alleged a violation of § 411(a)(2) only, the provision protecting free speech. The Amended Complaint adds allegations of violations of § 411(a)(1), (4), and (5). Defendants contend that such amendments would be futile because plaintiff cannot maintain a cause of action under any subpart of § 411. According to the defendants, mistaken view of the pleadings, Almeida's action under this statute is improper because he complains only of the loss of union employment while the statute protects only union membership rights.

■ This Court concludes that Almeida has sufficiently pled a cause of action under § 411. Contrary to defendants' assertions, Almeida alleges infringement of his union membership rights independent of his employment rights. Foremost among the injuries detailed is expulsion from the Steelworkers. Paragraph Six of the original Complaint, identical to the corresponding paragraph in the Amended Complaint, alleges that Almeida "was a member in good standing of [the Steelworkers] until his employment was illegally terminated by the Defendants." Reading plaintiff's submissions in the light most favorable to Almeida, this Court concludes that it is reasonable to infer from these alleged facts that Almeida has lost his membership rights in the Steelworkers.

According to the original Complaint, the purpose of the expulsion was to silence Almeida's dissenting voice. This is enough to support Count II of the original Complaint which alleges a violation of the free speech rights guaranteed by § 411(a)(2). Defendants may disagree with plaintiff's version of the facts, but this Court is unable to resolve factual disputes at this stage of the proceedings. Therefore, the Motion to Dismiss with regard to Count II of the original Complaint is denied.

■ The Amended Complaint contains further factual allegations which are sufficient to support actions based on other subsections of § 411. The amendments allege that union officials harassed, threatened, and punished Almeida to stop his campaign for elective office. Almeida claims that he was given particularly onerous travel assignments in order to disrupt his family life. He also accuses union officials of threatening to harm him if he continued to pursue elective office. Furthermore, Almeida contends that the counterclaims asserted by defendants are baseless and intended to coerce him to abandon his suit.

Whether Almeida can prove these charges is a matter left for another day. For the purposes of the Motion to Amend, Almeida's new allegations state causes of action under § 411(a)(1), (4), and (5), as well as bolster his § 411(a)(2) claim. Threats of violence sanctioned by incum-

in LMRDA law left by the *Finnegan* Court. In *Franza v. International Brotherhood of Teamsters, Local 671*, 869 F.2d 41 (2d Cir.1989), the court reaffirmed the notion that § 101 of the LMRDA protects only membership, and not employment, rights, even when the complainant is a nonpolicymaking employee. *See id.* at 47; *see also Cotter v. Owens*, 753 F.2d 223, 229 (2d Cir.1985). The *Franza* court explained that in rare and limited circumstances § 101 may be used to protect union employment rights, but that a more exacting standard would be applied to such claims. *See Franza*, 869 F.2d at 45. In such cases, plaintiff must "demonstrate[ ] upon clear and convincing evidence that dismissal was part of a scheme to suppress dissent." *Id.* Furthermore, § 101 liability will not attach to an

"isolated act of retaliation for political disloyalty." *Id.* Rather, plaintiff must demonstrate "a real threat to the democratic integrity of the union." *Id.* at 48. Such a threat might be created by the removal of a union official who has become the "symbol for a movement within the rank and file." *Id.* at 45; *see Cotter*, 753 F.2d at 229. The Second Circuit recently reiterated the exception initially carved out by the *Franza* and *Cotter* decisions in *Maddalone v. United Brotherhood of Carpenters & Joiners of America, Local 17*, 152 F.3d 178, 184 (2d Cir.1998). Given Almeida's factual pleadings, application of the *Franza* court's analysis of § 101 liability for the dismissal of nonpolicymaking employees is unnecessary.

bent union officials intended to discourage challengers in union elections are clearly sufficient to support a cause of action under the equal rights provision of § 411(a)(1) and the free speech provision of § 411(a)(2) because they discourage the exercise of these rights. Doling out work assignments intended to punish union dissidents also might constitute an infringement of § 411(a)(1) or (2). A false and vexatious filing could constitute an infringement of a union member's right to bring suit against his union guaranteed by § 411(a)(4) because it encourages a litigant to abandon a lawsuit or face the costs of defending baseless claims. Finally, an allegation of expulsion from the union without a hearing of any sort falls within the parameters of § 411(a)(5), which promises union members certain due process rights, including a full hearing, before expulsions can take effect.

Defendants oppose the Motion to Amend on the grounds that the amendments would be futile. However, as the Court has just demonstrated, Almeida's pleading sufficiently states causes of action under four separate subsections of § 411. Defendants' intense focus on the problem that a union employee faces in bringing a § 411 claim blinded them to the other charges made by Almeida. Almeida's pleadings detail specific actions by the defendants that might constitute infringements of his union membership rights to participate in union elections and to express an opposing view. Therefore, the amendments are not futile. Defendants press no other basis for denying the Motion to Amend. Because of this Court's stay, the parties have not had the opportunity to engage in much discovery, therefore defendants cannot complain that the new allegations will require them to reopen their investigation of the charges and redesign their defense. The Motion to Amend with regard to Counts III, IV, V, and VI of the Amended Complaint is granted.

## IV. Improper Discipline by a Labor Organization

Both complaints filed by Almeida allege that the termination of his membership rights in the Steelworkers constitutes improper discipline of a union member in violation of § 609 of the LMRDA, 29 U.S.C. § 529. Defendants, again focusing solely on Almeida's allegations with respect to his employment loss, argue that the statute is inapplicable to the case of a fired union employee and move to dismiss this claim. Defendants again ignore an important aspect of Almeida's pleadings.

Section § 609 of the LMRDA makes it unlawful for a labor organization, or any of its officers, "to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions" of the LMRDA. 29 U.S.C. § 529. As the Court has already explained, this is exactly what plaintiff alleges. Almeida claims that union officials expelled him from the Steelworkers union qua member because he exercised his § 411 rights. The pleadings also describe specific instances of harassment that buttress Almeida's claim that union officials were intent on quieting his challenge. Mindful of the low threshold for stating a claim, this Court concludes that plaintiff has averred enough facts to satisfy Rule 12(b)(6) with respect to his § 529 action. The Motion to Dismiss with respect to Count III of the original Complaint is denied and the Motion to Amend with respect to Count VII of the Amended Complaint is granted.

## V. Termination in Violation of Public Policy

In addition to the claims based on federal labor law, plaintiff asserts a state common law cause of action. According to Almeida's theory, state tort law provides an independent basis for a cause of action for wrongful discharge in violation of public policy. However, plaintiff equivocates when faced with the task of identifying the state that supplies this tort rule. In his

original Complaint, Almeida alleges a violation of the Rhode Island Whistleblowers' Protection Act, thereby implying that Rhode Island law governs this dispute. However, plaintiff has abandoned that count in his Amended Complaint, along with, presumably, his reliance on Rhode Island law. In the Amended Complaint, Almeida argues that the law of either Massachusetts or Pennsylvania governs a tort action arising from his employment dispute. Massachusetts was the place of his principal business office and Pennsylvania was the site of the CBA's execution. The question is academic. Under the law of either state, Almeida fails to state a claim upon which relief can be granted.

■ Under a well-established rule of contract law known as the "at-will" doctrine, an employment relationship may be terminated by either party for any reason absent some statute or contractual provision to the contrary. *See Jackson v. Action for Boston Community Dev., Inc.,* 403 Mass. 8, 525 N.E.2d 411, 412 (1988) (holding that an employee without an employment contract may be terminated for nearly any reason); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 176 (1974) (holding that an at-will employee almost always can be legally discharged for any reason or for no reason at all).

[14] The courts of Massachusetts and Pennsylvania have carved out an exception to the at-will doctrine that Almeida now invokes. The exception prohibits an employer from discharging an employee when the dismissal violates an important public policy of the state. Commonly, employees have sought the refuge of this exception in cases of retaliatory discharge. An employer may retaliate because he or she disapproves of the employee's performance of a civil duty that is valued by the state. In these cases, Massachusetts and Pennsylvania law intervenes to prohibit terminations "for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith–Pfeffer v. Superintendent of Walter E. Fernald State Sch.,* 404 Mass. 145, 533 N.E.2d 1368, 1371 (1989); *see Burns v. United Parcel Serv.,* 757 F.Supp. 518, 524 (E.D.Pa.1991) (applying Pennsylvania law and protecting an employee's right to file a workers' compensation claim); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119, 121 (1978) (protecting an employee's right to serve on a jury). The cause of action is designed to remedy the injustice to the employee's career and to protect the important state interest that otherwise would be frustrated by recalcitrant employers.

■ Yet the limits on this cause of action under both Massachusetts and Pennsylvania law are clear. A claim of wrongful discharge in violation of public policy can be maintained only by an at-will employee and not by an employee whose employment relationship is protected by a collective bargaining agreement. *See Acciavatti v. Professional Servs. Group, Inc.,* 982 F.Supp. 69, 74 (D.Mass.1997) (applying Massachusetts law and holding that because plaintiff's employment contract contained a "just cause" provision, "the public policy exception to the employment at will doctrine does not apply"); *Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 503 A.2d 36, 38 (1986) (holding that the court cannot "extend the wrongful discharge action to employees who are otherwise protected by contract or statute"); *see also Cullen v. E.H. Friedrich Co.,* 910 F.Supp. 815, 821 (D.Mass.1995) (applying Massachusetts law). Because "the tort of wrongful discharge is available only when the employment relationship is at will," it cannot be advanced by an employee who may be terminated only for "just cause" under a negotiated employment contract. *Phillips,* 503 A.2d at 38.

The CBA between the Steelworkers and Almeida's Staff Representatives Union governed Almeida's terms of employment

and conditions of termination. Almeida could only be fired for "just cause." In these important respects, the circumstances of his employment relationship are factually similar to those of the plaintiffs in the Massachusetts and Pennsylvania cases discussed above in which the courts of those states determined that no cause of action for wrongful discharge could be maintained. This Court is compelled by the laws of those two states to conclude that as an employee covered by a collective bargaining agreement that defines his conditions of employment, Almeida may not state a cause of action for wrongful discharge in violation of public policy. Accordingly, the proposal to amend the Complaint by adding a count based on this cause of action would be futile. The Motion to Amend with regard to Count I of the Amended Complaint is denied.[2]

## VI. Federal False Claims Act

■ Plaintiff's attempt to add a cause of action based on the whistleblower provisions of the federal False Claims Act, 31 U.S.C. § 3730(h), is clearly futile. Almeida alleges that the Steelworkers punished him by terminating his employment and treating him unfairly because he planned to report improprieties to the Internal Revenue Service. The specifics of the charges leveled against the Steelworkers by Almeida are irrelevant to this inquiry. It is sufficient to note that Almeida claims that the union failed to account properly for strike and lockout benefits which resulted in deficient tax payments and that the union failed to provide members with the appropriate tax forms which resulted in those members avoiding some amount of tax liability. Assertion of a False Claims Act action based on these allegations amounts to the very definition of futility.

The federal statute in question prohibits persons from defrauding the federal government by knowingly submitting certain types of false claims. *See* 31 U.S.C. § 3729. Private citizens may institute private actions on behalf of the government and themselves to recover damages for violations of the statute. *See id.* § 3730(b). The federal government is empowered with a right to intervene on its own behalf in any action filed by a private citizen. *See id.* § 3730(b)(2). Whether or not the government decides to intervene, a private plaintiff whose suit eventually results in a recovery for the government is entitled to a portion of the proceeds. *See id.* § 3730(d). Furthermore, "[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against ... by his or her employer because of lawful acts done by the employee" in furtherance of this statute may institute a civil action for "all relief necessary to make the employee whole." *Id.* § 3730(h).

But plaintiff is entitled to no relief unless he can demonstrate that he was harmed because of his investigation of a possible violation of § 3729. *See Hardin v. DuPont Scandinavia*, 731 F.Supp. 1202, 1204 (S.D.N.Y.1990) ("[I]f there has been no violation of § 3729, no cause of action under § 3730 exists."). In this case, no cause of action could possibly have existed because the statute expressly excludes income tax matters from the scope of the False Claims Act. *See* 31 U.S.C. § 3729(e) ("This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986."). Other federal courts have recognized that fraudulent income tax claims are not actionable under §§ 3729 and 3730. *See United States ex rel. Vallejo v. Investronica, Inc.*, 2 F.Supp.2d 330, 333 (W.D.N.Y.1998);

**2.** Some federal courts confronted with a claim of wrongful discharge in violation of public policy made by an employee covered by a collective bargaining agreement have also addressed the question of whether the common law claim is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See, e.g., Acciavatti*, 982 F.Supp. at 75–76. However, this Court need not express a view on this issue of federal law given the fundamental substantive defects in plaintiff's cause of action.

*United States ex rel. Fallon v. Accudyne Corp.,* 880 F.Supp. 636, 639 (W.D.Wis. 1995); *Hardin,* 731 F.Supp. at 1204. Some courts have noted that application of the False Claims Act to tax cases would be redundant and confusing given the fraudulent claims prohibitions within the Internal Revenue Code itself. *See Hardin,* 731 F.Supp. at 1204 (noting that the Internal Revenue Code provides that only the government may institute civil actions for the recovery of taxes). Plaintiff threatened only to inform the Internal Revenue Service of income tax evasions by the Steelworkers, a matter that expressly falls outside of the scope of § 3730. The Court is unable to imagine how Congress could have expressed its intent more clearly than it did in § 3729(e). There is no room for debate. Therefore, Count II of the proposed Amended Complaint is clearly futile. The Motion to Amend with regard to that count is denied.

### VII. Rhode Island Whistleblowers' Protection Act

The original Complaint filed by plaintiff sets forth a cause of action based on the Rhode Island Whistleblowers' Protection Act, R.I.Gen. Laws §§ 28–50–1 to –9 (1995). Essentially, that statute grants a civil right of action to an employee who has been damaged by an employer in retaliation for a report of wrongdoing to a state agency or official. *See* R.I.Gen. Laws § 28–50–3 ("An employer shall not discharge, threaten, or otherwise discriminate against an employee," because the employee reports to a public body a violation of the law which "the employee knows or reasonably believes has occurred or is about to occur."). The Court need not grapple with the merits of this count, however. Almeida has abandoned prosecution of this claim by failing to include it in his Amended Complaint, which purports to replace the original Complaint entirely. Because the Court grants plaintiff's Motion to Amend, with the exceptions detailed within this decision, the cause of action based on this state statute is dismissed.

*CONCLUSION*

For the foregoing reasons, defendants' Motion to Dismiss is granted in part and denied in part and plaintiff's Motion to Amend is also granted in part and denied in part. What remains of plaintiff's case, in the form of an Amended Complaint, is as follows: Count III alleges a cause of action for defendants' violation of 29 U.S.C. § 411(a)(1); Count IV alleges a cause of action for defendants' violation of 29 U.S.C. § 411(a)(2); Count V alleges a cause of action for defendants' violation of 29 U.S.C. § 411(a)(4); Count VI alleges a cause of action for defendants' violation of 29 U.S.C. § 411(a)(5); and Count VII alleges a cause of action for defendants' violation of 29 U.S.C. § 529. Plaintiff may not maintain causes of action based on 31 U.S.C. § 3730(h), the common law doctrine of wrongful termination in violation of public policy, or the Rhode Island Whistleblowers' Protection Act.

It is so ordered.